LAKE TANKERS CORP. *v.* HENN,
ADMINISTRATRIX.

No. 445. Argued May 6, 1957.—Decided June 10, 1957.

*Eugene Underwood* argued the cause for petitioner. With him on the brief was *H. Barton Williams*.

*Frank C. Mason* argued the cause and filed a brief for respondent.

MR. JUSTICE CLARK delivered the opinion of the Court.

This admiralty limitation proceeding resulted from a maritime disaster in 1954. The aggregate amount of all of the claims filed in the proceeding and for which the petitioner could be held liable if found at fault is less than the value of petitioner's vessels and their pending freight. The question presented is whether the respondent, the principal claimant, may, under these circumstances, proceed with her action in a state court, subject to the continuing jurisdiction of the federal court to protect petitioner's right to limited liability, to determine the obligation of the petitioner to respond in damages for the loss of the life of her husband. We agree with the disposition of the District Court as modified by the Court of Appeals.

Respondent's husband was a passenger on the pleasure yacht, *Blackstone,* which was involved in a collision on the Hudson River on July 10, 1954, with petitioner's tug, *Eastern Cities,* push-towing petitioner's barge, *L. T. C. No. 38.* The *Blackstone* capsized and respondent's husband was drowned. The other 10 persons on board the yacht were rescued. Respondent, as her husband's administratrix, brought suit against the petitioner in a New York state court claiming $500,000 damages for the loss of her husband's life. She alleged that the loss was caused by Lake Tankers' negligent operation of both its tug and its barge. Actions by four other claimants were also commenced in the New York state courts against the petitioner for damages for personal injuries and for loss of the *Blackstone.*

Thereafter, Lake Tankers Corporation filed this proceeding in admiralty in the United States District Court for the Southern District of New York for exoneration from or limitation of liability. As required by the statute authorizing limitation proceedings [1] the petitioner filed approved security. While the first bond was only in the amount of $118,542.21, representing the petitioner's interest in its tug alone, thereafter a bond covering the barge in the amount of $165,000 was filed. Appropriate restraining orders were issued enjoining the prosecution or filing of any claims against Lake Tankers except in the limitation proceeding. There is no dispute in regard to the adequacy or correctness of the amount of the two bonds.

After petitioner instituted the limitation proceeding the respondent filed a claim for $250,000 in it covering the same loss asserted in her state court case. The 10 survivors, including those who had filed suits in the state court, also filed their claims in the limitation proceeding. These totaled only $9,525. All of the claimants, including respondent, have relinquished all right to any damage in excess of the amounts set forth in their respective claims in the limitation proceeding and expressly limited their recovery to those amounts. The respondent has amended her claim further by allocating $100,000 of her alleged damage to the tug and the remaining $150,000 to the barge. She has also filed stipulations agreeing neither to increase these claims, nor to enter into a judgment in excess of these amounts, and she has waived any claim of *res judicata* relative to the issue of the petitioner's right to limit liability if that issue should be passed on in the state court proceeding. The District Court on application then vacated the restraining order since the total fund exceeded the amount of the claims.

---

[1] R. S. § 4285, as amended, 46 U. S. C. § 185.

137 F. Supp. 311. The Court of Appeals for the Second Circuit affirmed, entering an order, to which respondent has also agreed, with respect to the state court suit, as follows:

> " 'If claimant obtains a judgment in her state court suit for an amount in excess of $100,000, an injunction will issue permanently enjoining her from collecting such excess unless the judgment rests on a special verdict allocating the amount as between the libelant as owner of the tug and as owner of the barge respectively. Thus if the judgment exceeds $100,000 and the jury finds libelant liable solely as owner of the tug, she will be enjoined from collecting any excess. If the jury finds that the libelant is liable solely as owner of the barge, she will be enjoined from collecting any amount in excess of $150,000.' "
> 232 F. 2d 573, 577.

On rehearing the Second Circuit, sitting *en banc,* reaffirmed its decision. 235 F. 2d 783. We granted certiorari to pass upon the important jurisdictional question presented. 352 U. S. 914.

This Court has recently considered the cases which discuss the historical background of the Limited Liability Act, R. S. §§ 4281–4289, as amended, 46 U. S. C. §§ 181–196, in *British Transport Commission* v. *United States, ante,* p. 129. It was there pointed out that the Act was adopted primarily to encourage the development of American merchant shipping. The first section of the Act here involved contains its fundamental provision which declares that the liability for any damage arising from a disaster at sea which is occasioned without the privity or knowledge of the shipowner shall in no case exceed the value of the vessel at fault together with her pending freight, 46 U. S. C. § 183. As Mr. Justice Van Devanter stated for a unanimous Court in *White* v.

*Island Transportation Co.,* 233 U. S. 346, 351 (1914),
"The succeeding sections are in the nature of an appendix
and relate to the proceedings by which the first is to be
made effective. Therefore, they should be so construed
as to bring them into correspondence with it." Among
these sections dealing with the mechanics of effecting
such limitation of liability is § 184 covering those inci-
dents where "the whole value of the vessel, and her freight
for the voyage, is not sufficient to make compensation to
each of [the claimants]." In that event, the section
continues, "they shall receive compensation from the
owner of the vessel in proportion to their respective losses;
and *for that purpose*" the owners "may take the appro-
priate proceedings in any court . . . ." (Emphasis
added.) The succeeding section provides that in such
an event the owner "may petition a district court of the
United States . . . for limitation of liability within the
provisions of this chapter . . . ." It further declares that
upon compliance with its requirements "all claims and
proceedings against the owner with respect to the matter
in question shall cease." This provision is implemented
by Rule 51 of our Admiralty Rules which spells out in
more detail the manner in which the owner of any vessel
who "shall desire to claim the benefit of limitation of lia-
bility . . ." shall proceed. It is, therefore, crystal clear
that the operation of the Act is directed at misfortunes
at sea where the losses incurred exceed the value of the
vessel and the pending freight. And, as is pointed out
in *British Transport Commission, supra,* where the fund
created pursuant to the Act is inadequate to cover all
damages and the owner has sought the protection of the
Act the issues arising from the disaster could be litigated
within the limitation proceeding. Otherwise the purpose
of the Act, *i. e.,* limitation of the owner's liability, might
be frustrated. Only in this manner may there be a mar-
shalling of all of the statutory assets remaining after the

disaster and a concourse of claimants. In such a situation it matters not to the owner what the "take" of the individual claimant may be from the proceeding. for under the Act his payment is limited to the value of the vessel and the pending freight. He can suffer no more in any event.

On the other hand, where the value of the vessel and the pending freight, the fund paid into the proceeding by the offending owner, exceeds the claims made against it, there is no necessity for the maintenance of the concourse. This is not to say that *concursus* is not available where a vessel owner in good faith believes the fund inadequate, but here there is no contention that there might be further claims; the value of the vessels is undisputed and the claims are fixed; it follows indubitably that the fund is sufficient to pay all claims in full. While it is true that the claims as initially filed in the state court exceeded the fund created in the limitation proceeding, still when the admiralty court dissolved the injunction against the state suit these claims, as filed in and limited by stipulation and order of the admiralty court in the limitation proceeding, aggregated less than the fund. On appeal the Court of Appeals placed even more severe restrictions on the state court prosecution, thus insuring beyond doubt that petitioner's right of limitation under the Act was fully protected.

For us to expand the jurisdictional provisions of the Act to prevent respondent from now proceeding in her state case would transform the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights, even where the limitation fund is known to be more than adequate to satisfy all demands upon it. The shipowner's right to limit liability is not so boundless. The Act is not one of immunity from liability but of limitation of it and we read no other privilege for the shipowner into its language over and above that granting him limited

liability. In fact, the Congress not only created the limitation procedure for the primary purpose of apportioning the limitation fund among the claimants where that fund was inadequate to pay the claims in full, but it reserved to such suitors their common-law remedies. 63 Stat. 101, 28 U. S. C. § 1333.[2] In view of this explicit mandate from the Congress the respondent must not be thwarted in her attempt to employ her common-law remedy in the state court where she may obtain trial by jury.

The state proceeding could have no possible effect on the petitioner's claim for limited liability in the admiralty court and the provisions of the Act, therefore, do not control. *Langnes* v. *Green,* 282 U. S. 531, 539–540 (1931). It follows that there can be no reason why a shipowner, under such conditions, should be treated any more favorably than an airline, bus, or railroad company. None of them can force a damage claimant to trial without a jury. They, too, must suffer a multiplicity of suits. Likewise, the shipowner, so long as his claim of limited liability is not jeopardized, is subject to all common-law remedies available against other parties in damage actions. The Act, as we have said, was not adopted to insulate shipowners from liability but merely to limit it to the value of the vessel and the pending freight. It is contended that *Maryland Casualty Co.* v. *Cushing,* 347 U. S. 409 (1954), is to the contrary. While there was no opin-

---

[2] The forerunner of the current section gave the District Courts jurisdiction "Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it . . . ." 42 Stat. 634, 28 U. S. C. (1946 ed.) § 41 (3). As re-enacted it reads, in pertinent part, that the District Courts have original jurisdiction, exclusive of the courts in the States in "Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 63 Stat. 101, 28 U. S. C. § 1333.

ion of the Court in that case, it involved an alleged clash between Louisiana's direct action statute and the Act. The majority concluded there was no clash. The amount of the claims there far exceeded the value, if any, of the vessel and the pending freight. The language in one opinion to the effect that *concursus* is "the heart" of the limitation system therefore refers to those cases where the claims exceed the value of the vessel and the pending freight. In that event, as we have pointed out, the *concursus* is vital to the protection of the offending owner's statutory right of limitation. But this is not to say that where *concursus* is not necessary to the protection of this statutory right it is nonetheless required.

We conclude that in the situation here a *concursus* beyond that required by the orders heretofore entered in this case is not necessary and respondent may therefore proceed with her state court suit.

*Affirmed.*

MR. JUSTICE WHITTAKER took no part in the consideration or decision of this case.

MR. JUSTICE HARLAN, whom MR. JUSTICE FRANK-FURTER and MR. JUSTICE BURTON join, dissenting.

I agree with the result reached by Judge Hincks in his dissenting opinion below, 232 F. 2d 573, 579, and think that this judgment should be reversed. Since federal limitation jurisdiction was properly invoked, we should not permit it to be aborted by subsequent actions by the claimants with a view to obtaining transfer of the trial of their claims to the state courts. At the time the limitation proceeding was commenced the total claims which had been asserted in the several state court actions far exceeded the value of both the vessels owned by the petitioner, and limitation proceedings were required.

The steps subsequently taken by the claimants to limit their maximum recovery against the petitioner should no more be allowed to defeat or impair the full effectiveness of the limitation proceeding than would a subsequent reduction in the amount involved be permitted to defeat a diversity jurisdiction which had initially been properly invoked. See *St. Paul Mercury Indemnity Co.* v. *Red Cab Co.,* 303 U. S. 283.