**In the Matter of the Complaint of Universal Towing Company, a corporation, for Exoneration from or Limitation of Liability, UNIVERSAL TOWING COMPANY and Nilo Barge Line, Inc., Appellees,**

v.

**Carla BARRALE, Appellant.**

**No. 78–1486.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1978.

Decided March 27, 1979.

Rehearing Denied April 18, 1979.

James R. Dowd, of Dowd, Oates & Dowd, St. Louis, Mo. (argued), Edward L. Dowd and Francis M. Oates, St. Louis, Mo., on brief, for appellant.

Gary T. Sacks, St. Louis, Mo. (argued), and Robert D. Nienhuis, of Goldstein & Price, St. Louis, Mo., on brief, for appellee, Universal Towing Co.

Peter B. Hoffman, of Kortenhof & Ely, St. Louis, Mo. (argued), and Joseph M. Kortenhof, St. Louis, Mo., on brief, for appellee, Nilo Barge Line, Inc.

Before HEANEY and ROSS, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

* The Honorable TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation, participated in the post-argument conference and concurred in this opinion prior to his death on December 21, 1978.

HEANEY, Circuit Judge.

Carla Barrale appeals from the denial of her motion to dissolve an injunction and vacate an ad interim stipulation entered by the District Court pursuant to the Limitation of Liability Act, 46 U.S.C. § 181 et seq.[1] We reverse.

On February 22, 1977, Joseph V. Barrale, an employee of Universal Towing Company, proceeded on a vessel owned by Universal to a worksite on the Mississippi River near East Carondelet, Illinois. At that site, Barrale proceeded to transfer cargo from barge SBI–831 to barge BML–1 using a crane owned by Universal. The barges were under the control of Nilo Barge Line, Inc., during the transfer process. During the transfer operation, Barrale fell from barge BML–1 into the Mississippi River and drowned.

In April, 1977, Carla Barrale filed a two-count complaint against Universal and Nilo in the St. Louis Circuit Court.[2] In the first count, brought pursuant to the Jones Act, 46 U.S.C. § 688, Barrale alleged that her husband's death resulted from Universal's negligence. In the second count, brought under the Missouri Wrongful Death Statute, Mo.Stat.Ann. § 537.080, Barrale alleged that Nilo's negligence caused her husband's death. Barrale sought damages of one million dollars on each count.

On August 3, 1977, Universal filed a complaint in the District Court under the Limitation of Liability Act, seeking either exoneration from liability or limitation of liability. Universal also filed an ad interim stipulation that fixed the value of Universal's interest in its vessels involved in the accident at $85,000. The District Court thereafter entered an order approving the ad interim stipulation and enjoining the institution and prosecution of any legal proceeding against Universal except the limitation proceeding if it involved a claim arising out of the accident. This injunction, obviously, prevented Barrale from continuing her action in the St. Louis Circuit Court.

On September 9, 1978, Barrale moved to dissolve the restraining order on the ground that her claim was the sole claim that would arise in the limitation proceeding. Thereafter, on September 23, 1977, she filed her claim for one million dollars against Universal in the limitation proceeding. On November 16, 1977, Nilo filed a motion for leave to file a late claim since the time set by the District Court for filing claims had passed. After the court granted the motion, Nilo filed a claim against Universal seeking indemnity for any amount for which it might be held liable to Barrale, together with its costs and attorney's fees expended in defending Barrale's claim.

On November 30, 1977, Barrale filed a motion for leave to continue prosecution of her state court action. In this motion, she stipulated that the alleged value of the vessels was proper, conceded the right of Universal to litigate all issues pertaining to the limitation of liability in the District Court and waived any possible claim of res judicata as to damages based on the state court judgment.

On December 19, 1977, the District Court denied Barrale's motions. It concluded that Barrale had not demonstrated that this was a single claim case because Nilo's claim created a multiple claim situation. It relied on our decision in Helena Marine Service, Inc. v. Sioux City, 564 F.2d 15 (8th Cir. 1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978), in reaching its conclusion. The court refused to dissolve the injunction or to vacate the ad interim stipulation.

Barrale renewed her motion to dissolve the injunction on April 20, 1978. With her motion, Barrale filed a consent to the allowance and priority of Nilo's claim. The consent provided in relevant part:

---

1. Barrale appeals pursuant to 28 U.S.C. § 1292(a)(1).

2. Barrale also brought suit against D. J. Marine Service, Inc., a wholly owned subsidiary of Universal, as it was not entirely clear which corporation was Joseph Barrale's employer. We need not presently consider this issue.

Claimant Barrale is willing to consent, and does hereby consent, to the allowance of the Claim of Nilo Barge Line, Inc., for its attorney's fees and costs herein, in such amounts as may be fixed by the Court, and Claimant Barrale further consents that such amount, as it may be fixed by the Court, may be deducted and paid out of the funds available in this proceeding before the payment of any judgment that may be recovered by Claimant Barrale.

Barrale argued that Nilo's indemnification claim and her claim were one claim for purposes of the Limitation Act. She also argued that by consenting to the allowance and priority of Nilo's costs and attorney's fees, the action became a single claim case. The District Court denied the motion on June 14, 1978, and Barrale appealed.

■ The Limitation of Liability Act provides that a shipowner's liability to damage claimants is limited to his interest in the vessel and its freight provided that the loss is incurred without his privity or knowledge.[3] 46 U.S.C. § 183. An owner seeking to invoke the Act must petition the District Court for a limitation of liability and must deposit with the court an amount equal to the value of his interest in the vessel and its freight or give security for such value. 46 U.S.C. § 185; Fed.R.Civ.P. Supplemental Rule F. This amount constitutes the fund from which damage claims are satisfied.[4] Thereafter, the District Court issues a notice to all potential claimants requiring them to file their claims with the court within a specified time. Fed.R.Civ.P. Supplemental Rule F(4). The District Court also issues an injunction preventing further prosecution of any other action against the owner if the action involves a claim subject to limitation. Fed.R.Civ.P. Supplemental Rule F(3). See, e. g., Helena Marine Service, Inc. v. Sioux City, supra at 17; Pershing Auto Rentals, Inc. v. Gaffney, 279 F.2d 546, 547 (5th Cir. 1960). After all claims have been filed, the District Court determines if a loss occurred; whether there was negligence; if there was negligence, whether it was without the privity and knowledge of the owner; and if limitation is granted, how the fund should be distributed.[5] Farrell Lines, Inc. v. Jones, 530 F.2d 7, 10 (5th Cir. 1976); Petition of Trinidad Corporation, 229 F.2d 423, 428 (2d Cir. 1955).

■ The primary purpose for limitation proceedings is to provide a concourse for the determination of liability where the asserted claims exceed the value of the vessel. Lake Tankers Corp. v. Henn, 354 U.S. 147, 151–152, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957); Anderson v. Nadon, 360 F.2d 53, 57 (9th Cir. 1966). As stated by the Second Circuit in Petition of Moran Transp. Corp., 185 F.2d 386, 389 (2d Cir. 1950), cert. denied, 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 681 (1951),

> [T]he purpose of limitation proceedings is not to prevent a multiplicity of suits but, in an equitable fashion, to provide a marshalling of assets—the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full.

Accord, Petition of Trinidad Corporation, supra at 428.

Insofar as limitation proceedings deprive claimants of the right to a trial by jury, they conflict with the provisions of 28 U.S.C. § 1333 which provides in part:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

---

**3.** The Limitation of Liability Act was adopted primarily to encourage investment in the American shipping industry. Lake Tankers Corp. v. Henn, 354 U.S. 147, 150, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957); In re Barracuda Tanker Corporation, 281 F.Supp. 228, 230 (S.D.N.Y. 1968), modified, 409 F.2d 1013 (2d Cir. 1969).

**4.** A claimant may contest the sufficiency of the fund. In that event, the District Court must appraise the value of the owner's interest in the vessel and its freight. If the court finds that the deposit or security is insufficient, it must order its increase. Fed.R.Civ.P. Supplemental Rule F(7).

**5.** 46 U.S.C. § 184, however, provides that when there are several damage claimants "and the * * * value of the vessel, and her freight * * * is not sufficient to make compensation to each of them, they shall receive compensation from the owner of the vessel in proportion to their respective losses * * *".

(1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.* (Emphasis added.)

The federal courts, recognizing the significance of jury trials to claimants, have attempted to reconcile the "saving to suitors" clause with the purpose of the Limitation Act.

■ In two kinds of limitation cases, the federal courts have permitted claimants to pursue their remedies in a forum of their own choosing. The first situation exists if the limitation fund exceeds the total of all claims. *See, e. g., Lake Tankers Corp. v. Henn, supra; Petition of Trinidad Corporation, supra; Curtis Bay Towing Co. v. Tug Kevin Moran,* 159 F.2d 273 (2d Cir. 1947). They do so on the theory that if a limitation fund is inadequate to pay all potential claims, claimants have an interest not only in enhancing their own claims, but also in minimizing the claims of others. *Petition of Trinidad Corporation, supra* at 428. In such circumstances, the concourse of all claimants in the limitation proceeding is a necessary technique that is utilized to obtain an effective marshalling of assets and to achieve the Act's purpose. It prevents claimants from securing judgments in various courts that, in the aggregate, exceed the fund and, thus, assures the owner that he will not be required to pay damages in excess of the statutory limits. Consequently, the need for the limitation proceeding outweighs the claimant's interests under the "saving to suitors" clause.

If, however, the limitation fund is adequate to pay all potential claims, a concourse becomes unnecessary since the claimants are no longer competing among themselves for a greater portion of a limited fund. In this situation, the purpose of the Act will not be thwarted if claimants are allowed to proceed in a forum of their

choosing. To require the claimants to proceed in an admiralty court

would transform the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights, even where the limitation fund is known to be more than adequate to satisfy all demands upon it. The shipowner's right to limit liability is not so boundless. The Act is not one of immunity from liability but of limitation of it and we read no other privilege for the shipowner into its language over and above that granting him limited liability.

*Lake Tankers Corp. v. Henn, supra* 354 U.S. at 152–153, 77 S.Ct. at 1272.

The second situation exists if there is only one claim which exceeds the value of the fund. *See, e. g., Ex Parte Green,* 286 U.S. 437, 52 S.Ct. 602, 76 L.Ed. 1212 (1932); *Langnes v. Green,* 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931); *Helena Marine Service, Inc. v. Sioux City, supra; Petition of Red Star Barge Line,* 160 F.2d 436 (2d Cir.), *cert. denied,* 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859 (1947). As in the first situation, it is unnecessary to utilize a concourse since the limitation fund is not being apportioned among competing claimants. There is, however, a need to determine the right to limitation—an issue reserved to the federal courts. *See Petition of Red Star Barge Line, supra.* The courts have determined that in such cases a claimant may pursue his common-law remedies in state court provided he files a stipulation in the district court which concedes that all questions of limitation of liability are reserved for the admiralty court.[6] *Helena Marine Service, Inc. v. Sioux City, supra* at 18; *Anderson v. Nadon, supra* at 57; *Petition of Humble Oil & Refining Company,* 210 F.Supp. 638, 639 (S.D.Tex.1961), *aff'd,* 311 F.2d 576 (5th Cir. 1962); *Petition of Red*

---

**6.** Specifically, the claimant must file his claim in the District Court; concede that the value of the fund is the value of the vessels and freight; waive any right to assert a claim of res judicata based on the state court judgment; and concede the right to have all limitation of liability issues tried in the District Court. *See, e. g.,*

*Helena Marine Service, Inc. v. Sioux City,* 564 F.2d 15, 17 (8th Cir. 1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1875, 56 L.Ed.2d 387 (1978); *Petition of Red Star Barge Line,* 160 F.2d 436 (2d Cir.), *cert. denied,* 331 U.S. 850, 67 S.Ct. 1741, 91 L.Ed. 1859 (1947).

*Star Barge Line, supra.* This procedure protects the owner's interest in limiting liability while preserving the claimant's rights under the "saving to suitors" clause, including the right to a jury trial in state court. It is evident from the preceding discussion that federal courts are willing to grant a claimant his common-law remedies if the owner's right to limitation is protected in some fashion.

Barrale argues on appeal that the District Court erred when it refused to dissolve its injunction and allow her to continue her state court action because the limitation proceeding involved a single claim. She contends that Nilo's indemnification claim is identical to her claim, and that Nilo's claim for attorney's fees and costs, insofar as it creates a multiple claim situation, was removed from the limitation proceeding by her consent to its allowance and priority.

▮ We agree with Barrale that an indemnity claim does not by itself create a multiple-claim situation. The few cases that discuss indemnity claims in the context of a limitation proceeding indicate that the claim of an injured party and the indemnity claim of a third party are treated as a single claim. *Helena Marine Service, Inc. v. Sioux City, supra* at 19 & n.5; *Petition of Humble Oil & Refining Company, supra; Petition of Republic of (South) Korea,* 175 F.Supp. 732, 735 (D.Or.1959). *Cf. Curtis Bay Towing Co. v. Tug Kevin Moran, supra* at 275; *Petition of M. P. Howlett, Inc.,* 75 F.Supp. 438 (E.D.N.Y.1948). They reason that the indemnity claim is merely derivative of the one presented by the claimant. If a successful claimant proceeds directly against an owner, the claimant's recovery against the owner will be limited to the statutory amount. The claimant may, however, proceed against the third party in order to recover his judgment. In that event, the third party will seek indemnity

from the owner for any amounts he has paid in satisfaction of the claimant's judgment. The third party, however, can only recover what the claimant was entitled to recover from the owner, which cannot exceed the owner's statutory limit. The third party, in essence, assumes the position of the claimant. In either case, there is ultimately only one enforceable damage award against the owner.[7] Thus, Nilo's indemnification claim and Barrale's damage claim constitute a single claim for purposes of the limitation proceeding.

▮ Nilo's claim was not, however, limited to indemnification. Nilo also sought attorney's fees and costs. We held in *Helena Marine Service, Inc. v. Sioux City, supra,* that when a claim for attorney's fees and costs is added to an indemnity claim, a single claim situation ceases to exist. We reasoned that because of the added claim, the aggregate of the two judgments might be greater than the amount in the limitation fund. As in the usual multiple claim situation, a concourse would then be necessary in order to apportion the limitation fund.

Barrale argues that by filing her consent to Nilo's claim for attorney's fees and costs, she has reestablished a one-claim situation. Nilo and Universal argue, however, that Barrale is severing Nilo's claim for attorney's fees and costs from Nilo's indemnity claim solely to eliminate federal court jurisdiction, asserting that this is an improper purpose.[8] We fail to see the impropriety in Barrale's action. In multiple-claim situations, the courts, emphasizing the narrow purpose of the Limitation Act, have consistently allowed claimants to reduce the amount of their claims in order to eliminate the need for a limitation proceeding. *See, e. g., Lake Tankers Corp. v. Henn, supra; Petition of Texas Co.,* 213 F.2d 479 (2d Cir.), *cert. denied,* 348 U.S. 829, 75 S.Ct. 52, 99

7. The third party, obviously, would ultimately bear the liability for that portion of the damage award in excess of the owner's statutory limit.

8. Nilo and Universal also argue that Barrale could not consent to priority of Nilo's claim for attorney's fees and costs because she is imper-

missibly attempting to sever off a portion of a single claim. We conclude that Nilo's claim is not a single, indivisible one. It is, in fact, two separate claims, one for attorney's fees and costs and one for indemnity.

L.Ed. 653 (1954). The procedure employed by Barrale is likewise consistent with the purpose of the Act. *See Petition of Moran Transp. Corp., supra.*

Barrale's consent has, in effect, eliminated the need for a concourse since it is unnecessary to apportion an inadequate limitation fund between two claimants. Any award of attorney's fees and costs that Nilo receives [9] will be paid in full from the limitation fund. As Nilo will be paid in full, the limitation fund is inadequate solely with respect to Barrale's claim. This is the identical situation encountered in the ordinary single claim case. There is no danger that Universal will be subjected to competing judgments in excess of its statutory limitation. Under the circumstances, a limitation proceeding will serve no other purpose than to deprive Barrale of her right to pursue her common law remedies.

Nilo and Universal argue that even if Barrale's consent converted this action into a single claim case, the District Court did not abuse its discretion in refusing to dissolve the injunction. The District Court held, in the alternative, that it would not vacate the injunction because of Barrale's unexcused delay in filing her consent. The court noted that it had denied Barrale's original motion on December 19, 1977. Barrale, however, did not file her consent until April 20, 1978. During this period, several depositions had been taken, a motion for summary judgment had been made and ruled upon, and Nilo and Universal had filed proposed findings of fact and conclusions of law as well as trial briefs. In view of the extensive proceedings in federal court and the lack of proceedings in the state court, the District Court determined that it would be "inappropriate and unequitable to sustain the second motion of Carla Barrale." The District Court's reasoning indicates that it has misconceived the scope of its discretion.

■ It is true that in administering equitable relief under the Limitation Act, and particularly in deciding when to dissolve an injunction, the District Court exercises broad discretion. *Helena Marine Service, Inc. v. Sioux City, supra* at 17. In the case of either a single claim or of multiple claims that do not exceed the limitation fund, however, the court's discretion is narrowly circumscribed. The District Court must dissolve the injunction unless the owner can demonstrate that his right to limit liability would be prejudiced. *Cf. Lake Tankers Corp. v. Henn, supra* at 152–153. Universal has made no such showing here. Although Universal may incur additional expenses because it must, to a certain extent, duplicate its efforts in the state court, these expenses are a result of Universal's own actions which prevented Barrale from continuing her state court action. We note, moreover, that part of the delay in federal court was caused by Universal. Universal did not file its motion for summary judgment until seven months after the limitation proceeding began although the asserted facts on which the motion was made were known to Universal on the first day of the proceeding. The District Court held Barrale's second motion to dissolve the injunction in abeyance pending its ruling on the motion for summary judgment. In addition, Universal requested and received numerous extensions of time for the filing of replies to pleadings and for answers to interrogatories.

Thus, we conclude that the District Court should have dissolved the injunction insofar as the action involved a single claim and the owner did not show any prejudice to his right to a limitation.

The order of the District Court is reversed.

---

**9.** We express no view on the propriety of awarding Nilo attorney's fees and costs in this action.