**In re the Matter of TEXACO, INC., as Owner, and Texaco Exploration and Production, Inc., as Owner PRO HAC VICE and Operator of the BARGE BUSTER LEE Tx 4–878, Praying for Exoneration from and/or Limitation of Liability.**

Civ. A. No. 93–3427.

United States District Court, E.D. Louisiana.

March 2, 1994.

---

458

Grady S. Hurley, Robert B. Acomb, Jr., Jones, Walker, John Donellan Fitzmorris, Jr., Texaco Inc., Legal Dept., New Orleans, LA, for Texaco Inc. and Texaco Exploration & Production, Inc.

Lawrence J. Smith, Pamela Marshall West, New Orleans, LA, for Paul Williams.

Danny J. Lirette, St. Martin, Lirette, Houma, LA, for Harrison Ellender.

CHARLES SCHWARTZ, Jr., District Judge.

Before the Court is claimants', Harrison Ellender and Paul Williams', Motion to Lift Stay and/or Lift Restraining Order in the captioned matter filed on behalf of petitioners', TEPI and Texaco, Inc., **for exoneration from and/or limitation of liability.** In support of their motion, claimants' cite the recent Fifth Circuit case, *ODECO Oil & Gas Co. v. Bonnette,* 4 F.3d 401 (5th Cir.1993), which allowed claimants in a multiple claimant–*in* sufficient fund limitation proceeding to enter stipulations which would protect the shipowner's right to limitation of liability and at the same time allow the claimants to proceed with their *damage* claims in a single state court. TEPI and Texaco, Inc. (hereafter "the petitioners") filed formal opposition arguing *inter alia,* that (1) the stipulations entered by the claimants fail to adequately protect their interests in this *serious suit seeking exoneration* from any and all *liability* and limitation in the alternative; and (2) that the recent *ODECO* case is inapposite.[1]

---

1. The Fifth Circuit in *ODECO Oil & Gas Co. v. Bonnette,* 4 F.3d 401 (5th Cir.1993) acceded to the claimants' choice of forum, finding no intrinsic harm in staying a *"limitation"* proceeding pending a determination of damages in the Texas state court *if* it is accompanied by stipulations fully preserving petitioner's right to litigate *all* issues pertaining to *limitation* in the *limitation* court free of any claims of *res judicata* and to

The matter was set for oral hearing on Wednesday, March 2, 1994, but was submitted on the briefs. The Court, having considered the written submissions of the parties including their rebuttal and supplemental briefs, the applicable law, and for the reasons hereinafter stated, DENIES claimants' Motion to Lift Stay and/or Lift Restraining Order.

In *ODECO*, supra, the petitioner ODECO contended its case was a "multiple claimant-inadequate fund case." There was no mention of the possibility of exoneration from liability, whatsoever, in the entirety of the *ODECO* decision.[2] Proceeding from the premise that it was solely's ODECO's *right to limit* that was at issue, the Fifth Circuit held that it must accede to the multiple claimants' right to proceed in the forum of their choice "*if* it is accompanied by stipulations fully protecting ODECO's right to limit liability and agreeing to abide by an admiralty court determination of the right to limit." 4 F.3d at 405.

Unlike *ODECO*, the instant case is by and large a serious "*exoneration* from liability" suit, seeking limitation of liability only in the alternative.[3] Under the circumstances, this Court is *not* "hard-pressed" to deny claimants their choice of forum. Indeed, the concursus is vital to protect the petitioners' right to exoneration and/or limitation within the meaning of the Limitation Act and Supplemental Admiralty Rule F which prescribes the form and mode of proceeding in a case such as this one. Claimants' stipulations fail to protect petitioners in the case at bar who seek exoneration, and alternatively, limitation from liability. Since *ODECO*, supra, does not begin to address the issues inherent in this case, the Court is of the opinion that it is not bound by its pronouncements.

Morever, this Court will not create a "third" exception to rule. It is well settled that federal admiralty courts have exclusive jurisdiction over the shipowner's right to limit their liability under 46 U.S.C. § 181 *et seq.* (hereinafter referred to as "the Act"), and only the federal courts have jurisdiction to consider or adjudicate the issues arising out of a § 185 proceeding. Supplemental Admiralty Rule F(2) provides that a complaint under the Act may demand exoneration from as well as limitation of liability. Thus, in a suit seeking exoneration from and alternatively, limitation of liability under the Act, the limitation court must initially address exoneration from liability, inasmuch as in the event no liability is found, there is nothing to limit. Supplemental Rule F(8) provides in pertinent part: "*Upon determination of liability* the fund deposited or secured, or the proceeds of the vessel and the pending freight, shall be divided pro rata...." (emphasis supplied).

The Second Circuit in *In re Complaint of Dammers & Vanderheide & Sheepvaart Maats Christina B.V.*, 836 F.2d 750, 754 (2nd Cir.1988) succinctly set forth the purposes of the Act, to wit:

> [I]n a proceeding known as a *concursus*, the district court, sitting in admiralty without a jury, determines 'whether there was negligence; if there was negligence, whether it was without the privity and knowledge of the owner; and if limitation is granted, how the [limitation] fund should be distributed.' *[Matter of Complaint of] Universal Towing*, 595 F.2d [414] at 417 [ 8th Cir.1979) ]. *It is the only way that the admiralty court can achieve the primary purpose of the Act*—'to provide a marshalling of assets [and] the distribution pro rata of an inadequate fund among

---

abide by the an admiralty court determination of the right to limit.

**2.** Fearing the possibility of multiple negligence claims under Section 905(b) of the LHWCA, ODECO filed a declaratory judgment action seeking a determination, *inter alia*, whether an action for damages was barred by the statue and alternatively, seeking "to limit its liability to $30,000, the alleged value of the capsule, pursuant to the Limitation of Liability Act...." *ODECO Oil &*

*Gas Co., Drilling Div. v. Bonnette*, 4 F.3d 401, 403 (5th Cir.1993).

**3.** The instant proceeding arises out of an incident in August 1993, involving an explosion which occurred on the tank barge, BUSTER LEE, resulting in property damage and personal injuries. Petitioners submit that the evidence at the trial on liability will show that they were free from fault entitled to exoneration from liability, and not merely limitation of liability.

claimants, non of whom can be paid in full.' *In re Moran Transportation Corp.*, 185 F.2d 386, 389 (2d Cir.1950), *cert. denied*, 340 U.S. 953, 71 S.Ct. 573, 95 L.Ed. 687 (1951). *See also Lake Tankers*, 354 U.S. at 151–52, 77 S.Ct. at 1272; *Newton v. Shipman*, 718 F.2d 959, 961 (9th Cir.1983) (per curiam); *S & E Shipping [v. Chesapeake & Ohio R.R. Co.]*, 678 F.2d [636] at 642 [ (6th Cir.1982) ]; *Universal Towing*, 595 F.2d at 417.

In exercising this equitable power, of course, the admiralty court must necessarily deny the claimants their right to pursue common law claims before a jury. *There is no right to a jury in actions instituted in admiralty, see Waring v. Clarke*, 46 U.S. (5 How.) 441, 458–60, 466, 12 L.Ed. 226 (1847); *Newton v. Shipman*, 718 F.2d at 962, and the claimants are enjoined from pursuing common law actions in other forums. *Id.* (emphasis added).

▋ Recognizing the conflict between exclusivity of jurisdiction under the Act and the promise of 28 U.S.C. § 1333 that the exercise of admiralty jurisdiction will not deny suitors their right to common law remedies, courts have identified two sets of circumstances in which the exclusive jurisdiction of the admiralty courts must give way, to wit: (1) the single claimant exception—where a *single* claimant brings an action seeking an amount in excess of the limitation fund, the district court must limit the stay of other proceedings if that claimant concedes the admiralty court's exclusive jurisdiction to determine all issues relating to exoneration from and/or limitation of liability; and (2) the multiple claimant-sufficient fund exception—where the limitation fund, which represents the value of the vessel and its cargo, exceeds the aggregate of the claims to be made against it, a *concursus* is unnecessary and a district court must allow claimants to proceed in other forums.[4]

Claimants in the case at bar fail to come within the purview of either of the aforesaid well-defined exceptions. In this multiple claimant situation the aggregate of the claims far exceeds the limitation fund.

The Court is also guided by the Supreme Court's admonitions in *Miles v. Apex Marine Corp.*, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) in its refusal to create a third exception to exclusivity of jurisdiction under the Act, to wit: "In this era, an admiralty court should look *primarily* to [ ] legislative enactments for policy guidance"; "keep strictly within the limits imposed by Congress"; and "be vigilant not to overstep the well-considered boundaries imposed by federal legislation" as "these statutes both direct and delimit our actions." *Id.* at 27, 111 S.Ct. at 323. Although the Supreme Court in *Miles* was specifically concerned with remedies available the Jones Act and DOHSA, it also spoke to legislation in general, to wit:

Admiralty is not created in a vacuum; legislation has always served as an important source of both common law and admiralty principles. . . .

But legislation sends other signals to which an admiralty court must attend. 'The legislature does not, of course, merely enact general policies. By the terms of a statute, it also indicates its conception of the sphere within which the policy is to have effect.' Congress, in the exercise of its legislative powers, is free to say 'this much and no more.' An admiralty court is not free to go beyond those limits.

*Id.* at 24, 111 S.Ct. at 321.

The Limitation of Liability Act which became effective in 1851 was established "to encourage the development of American merchant shipping."[5] The Act addresses "misfortunes at sea where the losses incurred exceed the value of the vessel and pending freight."[6] Under these circumstances a shipowner may invoke protection of the Act by filing a complaint for exoneration from and/or limitation of liability. 46 U.S.C. § 185 (1988); Supplemental Admiralty Rule F. Upon compliance with the statute's requirements, the Act provides that "all claims and proceedings against the owner with respect to the matter in question shall cease." *Id.*

---

4. *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 151–52, 77 S.Ct. 1269, 1272, 1 L.Ed.2d 1246 (1957); *Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546, 549–50 (5th Cir.1960); *In re Dammers & Vanderheide & Sheepvaart Maats Christina B.V.*, 836 F.2d 750, 754–55 (2nd Cir.1988).

5. *Lake Tankers Corp. v. Henn*, 354 U.S. 147, 150, 77 S.Ct. 1269, 1271, 1 L.Ed.2d 1246 (1957).

6. *Id.* at 151, 77 S.Ct. at 1272.

As counsel for petitioners aptly points out, that while the Act has been effect for well-over a century, it can hardly be characterized as antiquated. It was amended by Congress in 1936 and again in 1984 without changing the longstanding procedural rules enunciated by the Supreme Court and by lower federal courts.

In this vein, Supplemental Admiralty Rule F(3) further defines the procedural requirements to invoke the Act's protections and provides that "on application of the plaintiff the court shall enjoin the further prosecution of any action or proceeding against the plaintiff or plaintiff's property with respect to any claim subject to the limitation action."

In *Lake Tankers Corp. v. Henn*, the Supreme Court emphasized the importance of the concursus, stating that "concursus is 'the heart' of the limitation proceeding" and vital to the protection of rights of the vessel owner created by Act of Congress. 354 U.S. at 151–54, 77 S.Ct. at 1272–73. The foregoing reminds this Court of its prior holding in *In re Exoneration from or Limitation of Liability of Shell Oil Co.*, 780 F.Supp. 1086 (E.D.La.1991) wherein it refused claimants' request to modify an injunction, stating that:

> The limitation proceeding's purposes other than encouraging investment in the shipping industry figure significantly in this Court's determination of the issues before it. Augustus Hand wrote early on in the jurisprudence: "The purpose of a limitation proceeding is not merely to limit liability but to bring *all* claims into concourse and settle *every* dispute in *one* action." *The Quarrington Court*, 102 F.2d 916, 918 (2nd Cir.), *cert. denied*, 307 U.S. 645, 59 S.Ct. 1043, 83 L.Ed. 1525 (1939) (emphasis added).

A critical purpose underlying the limitation action is to achieve a "*complete* and just disposition of a many-cornered controversy." Thus, the limitation proceeding furthers the goal of uniformity which has been declared a dominant requirement for admiralty law. The importance of this aspect was reiterated by Justice Frankfurter in *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, [414–17] 74 S.Ct. 608, 611–12, 98 L.Ed. 806 (1954), wherein it is stated:

> The heart of [the limitation] system is a concursus of all claims to ensure prompt and economical disposition of controversies in which there are often a multitude of claimants....

> Moving claimants' motion to modify the injunction is antithetical to the very nature of the limitation proceeding.... The Limitation of Liability Act provides this Court with the power to enjoin suits against the "owner" to achieve *uniformity* and accordingly, assure that all claims will be heard in a single forum.

*Id.* at 1091.

In their rebuttal memorandum, claimants direct this Court's attention to the language in the Supreme Court's decision in *Lake Tankers* that the Limitation "Act is not one of immunity from liability but limitation of it" and further argue that exoneration from liability is not contemplated by the Act. 354 U.S. at 152–53, 77 S.Ct. at 1272.

Claimants' argument ignores wholly ignores the initial determination that must be made by the limitation court—that is, whether the vessel owner is liable. That one court may conclude the owner was not negligent, another may find the owner was negligent, a third may conclude a claimant is entitled to $100,000, and another may determine damages at $1,000,000 explains why the *concursus is vital* in a multiple claimant/insufficient fund scenario. Unquestionably, in proceedings where this does happen, the limitation court's efforts are thwarted and may not effectively secure the vessel owner's rights under the Limitation Act. See, *Providence & New York S.S. Co. v. Hill Mfg. Co.*, 109 U.S. 578, 594–95, 3 S.Ct. 379, 389–90, 27 L.Ed. 1038 (1883) (stating, *inter alia*, "the very object of the proceedings for limited liability is to inquire and determine whether the parties ought to be sued at all in any other tribunal after giving it up, or submitting to pay the value of, all their interest in the ship and freight."). In the *Providence* case, the Supreme Court observed:

> [T]he practical value of the [limitation of liability] law will largely depend on the manner in which it is administered. If the courts having the execution of it adminis-

ter it in a spirit of fairness, with the view of giving to ship-owners the full benefit of the immunities intended to be secured by it, the encouragement it will afford commercial operations (as before stated) will be of the last importance; but if it is administered with a tight and .grudging hand, construing every clause most unfavorably against the ship-owner, and allowing as little as possible to operate in his favor, the law will hardly be worth the trouble of its enactment. Its value and efficiency will also be greatly diminished, if not entirely destroyed, by allowing its administration to be hampered and interfered with by various and conflicting jurisdictions.

109 U.S. at 588–89, 3 S.Ct. at 386.

Under Supplemental Admiralty Rule F promulgated by the Supreme Court, the questions to be settled in proceedings under the Limitation Act are first, whether the ship or its owners are liable, and secondly, if liable, whether the owners are entitled to limitation of liability. To render a conclusive decision, the limitation court must have control of the subject of the aforesaid inquiries *to the exclusion of other courts.* This Court is quite familiar with the Supreme Court's statement in *Lake Tankers* to the effect that the Limitation Act was not adopted to insulate shipowners from liability. However, this statement should not be read out of context. The *Lake Tankers* court further explained that its decision was *not* at all contrary to thrust of the Supreme Court's earlier decision in *Cushing,* wherein it held that *concursus* is " 'the heart' " of the limitation system because it refers to those cases where the claims exceed the value of the vessel and pending freight. The instant case is also one of those cases—that is, a case involving multiple claims which exceed the value of the vessel and pending freight. The *Lake Tankers* court stated in no uncertain terms that: "In that event, as we have pointed out, **the concursus is vital to the protection of the offending owner's statutory right of limitation.**" 354 U.S. at 154, 77 S.Ct. at 1273. This Court is bound by the latest statement of the Supreme Court—that is, in a multiple claims insufficient fund case the concursus is vital to the protection of petitioner's rights

under the Act. The case at bar indubitably falls into that category.

Accordingly, and for all of the above and foregoing reasons,

IT IS ORDERED that claimants' Motion to Lift Stay and/or Lift Restraining Order is hereby DENIED.