United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 27, 2006**

Charles R. Fulbruge III
Clerk

REVISED NOVEMBER 16, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

----------------------

No. 05-61156

----------------------

INLAND DREDGING, In the Matter of the Complaint of Inland Dredging Company, LLC, Owner and Operator of the M/V Ms Paula, for Exoneration from Limitation or Liability,

        Plaintiff - Appellee

   v.

RICARDO SANCHEZ,

        Claimant - Appellant

-------------------------

Appeal from the United States District Court for
the Northern District of Mississippi

--------------------------

Before JONES, Chief Judge, and REAVLEY and PRADO, Circuit Judges.

REAVLEY, Circuit Judge:

Ricardo Sanchez appeals an injunction preventing him from proceeding with his Jones Act suit in a different federal court after the shipowner filed a limitation of liability action in this federal court and obtained the injunction. We vacate the injunction.

I.

Ricardo Sanchez claims that he suffered injury while working

1

as a seaman aboard the M/V Ms. Paula, a vessel owned by Inland Dredging Company, LLC ("Inland Dredging"). Aware of Sanchez's claim, Inland Dredging filed a petition for limitation of liability under the Limitation of Liability Act (the "Act" or "Limitation Act"), 46 U.S.C. app. § 185, in the United States District Court for the Northern District of Mississippi and then filed an Ad Interim Stipulation for Value, which stated that the value of the vessel and her then-pending freight did not exceed $235,000. The district court approved the Ad Interim Stipulation for Value and issued an order "restraining and enjoining all claims and proceedings against the M/V MS. PAULA and/or Inland Dredging Company, LLC, as owner and operator of the M/V MS. PAULA, in any court whatsoever, except in this proceeding for limitation . . . ."

Sanchez filed a motion in the Mississippi court to dissolve the injunction, arguing that he should be allowed to proceed in the United States District Court in Galveston, and attached a stipulation to his motion in which he agreed that the Mississippi court had exclusive jurisdiction to determine Inland Dredging's right to limitation of liability and the value of the limitation fund. Sanchez waived the defense of res judicata with respect to limitation issues, "based upon any judgment in any other forum of his choice," and further agreed not to seek a ruling in the Galveston court on any of these issues. Sanchez acknowledged that the Mississippi court had exclusive authority to determine the value of the Ms. Paula and her then-pending freight. Finally,

2

Sanchez agreed not to seek execution of any judgment obtained in the Galveston court in excess of the value of the Ms. Paula and her then-pending freight as determined by the Mississippi court.

Sanchez contended that as a single claimant who had filed a stipulation that protected the shipowner's rights to limitation of liability, he should be allowed to proceed with his claims in his chosen forum, the Galveston court. Inland Dredging responded that because Sanchez pursued remedies in a federal court sitting in admiralty, rather than a common law state court, he was restricted to litigating all issues before the Mississippi court. The district court agreed with Inland Dredging and denied Sanchez's motion to dissolve the injunction.

## II.

The liability of a vessel owner without fault is limited by 46 U.S.C. app. § 183, and the owner may file in federal court to effectuate that limit by complying with 46 U.S.C. app. § 185.[1]

---

[1] 46 U.S.C. app. § 185 provides that:

The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions of this chapter and the owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the interest of such owner in the vessel and freight, or approved security therefor, and in addition such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 183 of this title, or (b) at his option shall transfer, for the benefit of claimants, to a trustee to be appointed by the court his interest in the vessel and

3

This petition for limitation of liability limits the claimant to recovery of damages, if any, of no more than the value of the vessel and cargo (subject to the provisions of § 183).

The last sentence of § 185 reads:

Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease.

The question here is the meaning of that sentence. Does it provide that proceedings respecting *limitation* of the shipowner's liability are confined to the limitation court, or does it prohibit any other proceeding respecting the *fact* of the shipowner's liability? If it is given the latter meaning, then a conflict must be found in the law (as by the "saving to suitors" reservation of the general jurisdiction statutes, 28 U.S.C. § 1333) before a related action may proceed.

We agree with the Second Circuit in *Kreta Shipping v. Preussay International Steel Corp.*,[2] which followed the language of the Supreme Court in *Lake Tankers v. Henn*, saying "The [Limitation] Act is not one of immunity from liability but of limitation of it and we read no other privilege for the shipowner into its language over

freight, together with such sums, or approved security therefor, as the court may from time to time fix as necessary to carry out the provisions of section 183 of this title. Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease.

[2] 192 F.3d 41, 48 (2d Cir. 1999).

4

and above that granting him limited liability."[3]  The *Kreta* court held that "the injunction should be lifted irrespective of whether the claimants wish to assert 'common-law rights' in state courts or other rights elsewhere."[4]  The *Kreta* court was following a prior opinion of the Second Circuit where Judge Learned Hand wrote that a federal court in New York would have no justification for enjoining suits in a federal court in Pennsylvania because "every claimant has a legally protected interest in choosing his forum . . . ."  *Curtis Bay Towing Co. v. Tug Kevin Moran*.[5]

This construction of § 185 is consistent with the construction given generally by federal courts in the context of other statues that might otherwise be read to vest a putative tort defendant with a superior right to choice of forum.  For example, we would not allow a tortfeasor to seek a declaratory judgment of non-liability and thereby "procedurally fence" the injured party in the tortfeasor's chosen forum.[6]  Federal courts also guard against the use of interpleader actions as devices to procedurally fence

---

[3]  354 U.S. 147, 152-53; 77 S. Ct. 1269, 1272 (1957).

[4]  192 F.3d at 48.

[5]  159 F.2d 273, 276 (2d Cir. 1947).

[6]  *E.g., AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004) (citing 10B WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2765 (3d ed. 1998) (citing *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1168-69 (7th Cir. 1969))).

claimants.[7]

Further, the Supreme Court quoted *Lake Tankers Corp. v. Henn* in *Lewis v. Lewis & Clark Marine, Inc.*[8] where the court held that the Limitation Act does not grant vessel owners a "freestanding" right to obtain exoneration from liability in federal court where limitation of liability is not an issue.[9]

We do not find anything in the Act's text, legislative history, or the Supreme Court's opinions that would lead us to conclude that only where the Act and the saving to suitors clause conflict is it appropriate for the limitation court to dissolve its injunction and allow the claimant to proceed in a different forum. The Act's provision of injunctive relief to protect the shipowner's right to limited liability is an equitable remedy, and when the Congress legislates to affect an area of jurisprudence as well developed as equity, we presume that the Congress intended to preserve established principles.[10]  "[T]he traditional function of equity has been to arrive at a 'nice adjustment and reconciliation of competing claims' [so that] the court 'balances the conveniences of the parties and possible injuries to them [] as they may be

---

[7]  *NYLife Distribs., Inc. v. Adherence Group*, *Inc*. 72 F.3d 371, 382-83 (3d Cir. 1995).

[8]  531 U.S. 438, 121 S. Ct. 993 (2001).

[9]  531 U.S. at 452-53; 121 S. Ct. at 1003.

[10]  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313, 102 S. Ct. 1798, 1803 (1982) (citation omitted).

affected by the granting or withholding of the injunction.'"[11]  What we and the Supreme Court find essential in construing § 185 is this balancing of the rights of the parties.

In *Lagnes* v. *Green*,[12] the Court described the limitation court's choice as being between two alternatives:  "To retain the cause would be to preserve the right of the shipowner, but to destroy the right of the suitor in the state court to a common law remedy;" whereas "to remit the cause to the state court would be to preserve the rights of both parties."[13]  We find that choice analogous in this question of forum.  To allow the limitation court to restrain prosecution of the action in the claimant's chosen forum would preserve the right of the shipowner to limit his liability, but would destroy the traditional right of a claimant to seek redress in his chosen forum.  On the other hand, if a claimant has provided a stipulation that adequately protects the shipowner's rights and the limitation court dissolves the injunction, both parties' rights are preserved.    Similarly, in *Lake Tankers Corp. v. Henn*,[14] where the Court found that the claimant should be allowed to proceed in her chosen forum where the shipowner's fund was adequate to satisfy any damage award, the Court stressed that to

---

[11]  456 U.S. at 312, 102 S. Ct. at 1803.

[12]  282 U.S. 531, 541, 51 S. Ct. 243, 247 (1931).

[13]  *Id.*

[14]  354 U.S. 147, 152, 77 S. Ct. 1269, 1272 (1957).

7

expand "the Act to prevent [a claimant] from now proceeding in her state case would transform the Act from a protective instrument to an offensive weapon by which the shipowner could deprive suitors of their common-law rights. . . ."  In this case, allowing the Mississippi court to continue to restrain Sanchez from pursuing his case in the Galveston court would turn the Act into an offensive instrument to cut off a claimant's traditional right to choose his forum.

And we are, of course, mindful of the Supreme Court's admonition that we "read no other privilege for the shipowner into [the Act's] language over and above that of granting him limited liability."[15]

We therefore find no principled reason to read the Act to preclude the traditional right of an aggrieved party to seek redress in the forum of his choice.  We join the Second Circuit and hold that a single claimant's choice of forum is a sufficient interest to warrant the dissolution of an injunction if the claimant files stipulations that adequately protect the shipowner's rights under the Act.

Applying our holding to the facts before us, we conclude that the district court abused its discretion in refusing to dissolve the injunction because it rested its decision on an error of law; specifically, that because the saving to suitors clause did not

---

[15]  354 U.S. at 152-53, 77 S. Ct. at 1272.

apply, Sanchez was not entitled to proceed in his chosen forum. No party disputes that Sanchez's stipulations are adequate to protect Inland Dredging's limitation rights under the Act, and the injunction should be dissolved.[16]

INJUNCTION VACATED; CAUSE REMANDED.

---

[16] *See In Re Tetra Applied Techs., L.P.*, 362 F.3d 338, 343 (5th Cir. 2004) (finding an abuse of discretion where district court erroneously concluded that stipulations did not adequately protect shipowner).