**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BARBARA PICKLE, Administrator for the
Estate of Roy L. Pickle, deceased, on
behalf of the Estate of Roy L. Pickle,
and on behalf of Barbara Pickle and
Joshua Pickle, beneficiaries of the
Estate of Roy L. Pickle; JOSHUA
PICKLE, individually and as beneficiary
of the Estate of Roy L. Pickle; VICTOR
LEE PICKLE, individually and as
beneficiary of the Estate of Roy L.
Pickle; ALEXANDER LLOYD PICKLE,
individually and as beneficiary of the
Estate of Roy L. Pickle; SUZANNE E.
WILLIAMS, Administrator for the Estate
of Jonathan Mason Williams, Jr.,

deceased, on behalf of the Estate of
Jonathan Mason Williams, Jr., and on
behalf of John M. Williams, III,
Ronald L. Williams, Wayne E.
Williams, and Suzanne E. Williams,
beneficiaries of the Estate of Jonathan
Mason Williams, Jr.; JOHN M.
WILLIAMS, III, Beneficiary of the Estate
of Jonathan M. Williams, Jr.; RONALD
L. WILLIAMS, Beneficiary of the Estate
of Jonathan M. Williams, Jr.; WAYNE
E. WILLIAMS, Beneficiary of the Estate
of Jonathan M. Williams, Jr.,
Plaintiffs-Appellees,

v.

No. 98-2071

CHAR LEE SEAFOOD, INCORPORATED, In
the matter of the complaint of Char
Lee Seafood, Incorporated as owner of
the F/V Char-Lee II, and Thomas
Leroy Bailey and Charlotte Bailey,
individually and as owners of the F/V
Char-Lee II, for exoneration from or
limitation of liability; THOMAS LEROY
BAILEY, Individually and as owner of
the F/V Char-Lee II; CHARLOTTE
BAILEY, Individually and as owner of
the F/V Char-Lee II,
<u>Defendants-Appellants.</u>

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Malcolm J. Howard, District Judge.
(CA-97-153-4-H, CA-97-154-4-H, CA-97-180-4-H)

Argued: March 4, 1999

Decided: April 19, 1999

Before NIEMEYER and WILLIAMS, Circuit Judges, and
SMITH, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Vacated and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Williams and Judge Smith joined.

_____

**COUNSEL**

**ARGUED:** Robert Allen Jenkins, Peachtree City, Georgia, for Appel-
lants. Robert John McAfee, MCCOTTER & MCAFEE, P.L.L.C.,

2

New Bern, North Carolina, for Appellees. **ON BRIEF:** James M. Walen, K. Lee McEniry, WALEN & MCENIRY, P.A., Fayetteville, North Carolina, for Appellants. Charles Kennedy McCotter, Jr., MCCOTTER & MCAFEE, P.L.L.C., New Bern, North Carolina, for Appellees.

_____

**OPINION**

NIEMEYER, Circuit Judge:

This consolidated admiralty case presents questions about the proper court management of three constituent maritime actions, two actions filed by the families of fishing boat crewmen who were lost at sea and one limitation-of-liability action filed by the boat's owner with respect to the other two actions. The district court consolidated all three actions for trial, finding that to do so would "eliminate the possibility of an inconsistent resolution on common issues and necessitate fewer judicial resources." The court also noted that through consolidation "a time savings would result . . . and witnesses would suffer less inconvenience."

Even though we believe that the district court might be able, through the entry of further procedural orders, to fulfill the essential purposes of the limitation-of-liability action filed by the shipowner, we are required to enforce the mechanism specified by the Shipowner's Limitations of Liability Act that all other actions against the owner "with respect to the matter in question shall cease." 46 U.S.C. app. § 185. Accordingly, we vacate the consolidation order and remand this case with instructions that only the limitation-of-liability action proceed until the limitation issues are determined.

I

Roy L. Pickle and Jonathan M. Williams, Jr., were two crewmen on the F/V Char-Lee II, a fishing boat owned by Char Lee Seafood, Inc. Jesse Lee Dempsey was hired by the owner to serve as captain of the F/V Char-Lee II. While Pickle, Williams, and Dempsey were fishing on the vessel approximately 30 miles southeast of Cape Look-

3

out, North Carolina, in late March and early April 1997, gale-force winds and rough seas erupted. On March 31 and April 1, Captain Dempsey had his last radio contacts with other vessels in the fishing fleet, discussing the deteriorating weather conditions. Allegedly, he told other captains that "he was staying out to catch fish." While the other boats in the fishing fleet returned to port on April 1, 1997, the F/V Char-Lee II never returned. Following a massive Coast Guard search, only unidentified debris was found. Several weeks later, the boat's "electronic position indicator radio beacon" was found 300 miles east of Cape Henry, Virginia, attached to a three-by-six foot piece of board with the words "F/V Char-Lee II" painted on it. The F/V Char-Lee II was presumed to have sunk between April 1 and April 4, 1997, resulting in the deaths of Pickle, Williams, and Captain Dempsey.

The estates and families of Pickle and Williams filed separate actions in admiralty in the district court against Char Lee Seafood and its primary officers, directors, and shareholders (collectively "Char Lee Seafood"), alleging negligence under the Jones Act, negligence and unseaworthiness under general maritime law, negligence and unseaworthiness under the Death on the High Seas Act, and wrongful death under North Carolina law. In addition to alleging the owner's failure to train the crew and to equip the F/V Char-Lee II properly, the plaintiffs alleged negligence of the owners as follows:

> Upon information and belief, [Char Lee Seafood] pressured Captain Dempsey to keep the F/V Char-Lee II at sea during severe storms in order to catch more fish and make more money. As a result of this constant pressure, Captain Dempsey habitually kept the F/V Char-Lee II and her crew out at sea during severe storms. Captain Dempsey gained a reputation for keeping the F/V Char-Lee II out at sea when other fishing boats headed for port, and he became known as "Hurricane Jesse."

Confronting these two actions, Char Lee Seafood filed a separate action in the district court invoking the Shipowner's Limitation of Liability Act, 46 U.S.C. app. § 183 et seq ., and alleging that its liability in any and all suits relating to the disappearance of the F/V Char-Lee II was limited to the value of the ship after the accident, amount-

4

ing to the estimated $250 value of the radio beacon that had been found. The district court issued an order in that action requiring public notice of the action and enjoining the filing and prosecution of all other actions relating to the disappearance of the F/V Char-Lee II until determination of the limitation action. The court also required Char Lee Seafood to post a bond in the amount of $1,000.

On April 1, 1998, six months after the district court entered its injunction in the limitation-of-liability action, the district court sua sponte entered an order consolidating for trial the two individual actions brought by the estates and families of Pickle and Williams with the limitation-of-liability action. Acting pursuant to Federal Rule of Civil Procedure 42, the court stated that consolidation would eliminate the possibility of inconsistent resolutions and would reduce the expenditure of judicial and litigant resources. The court concluded by noting that it could foresee "no prejudice to any of the parties by consolidating these cases." Char Lee Seafood, which had never had the opportunity to present its position on the propriety of consolidation, filed a motion for reconsideration and requested that the limitation-of-liability action be severed from the other two actions. When the court denied its motion by order dated June 15, 1998, Char Lee Seafood filed this interlocutory appeal.

II

Pickle and Williams contend as a threshold matter that the district court's June 15, 1998 order denying Char Lee Seafood's motion for reconsideration of the district court's sua sponte consolidation order and for severance of the limitation-of-liability action from the other two actions is not an order from which an interlocutory appeal may be taken. They also contend that Char Lee Seafood's notice of appeal was in any event filed untimely because the time should be counted from the district court's consolidation order and not from the order denying the motion to reconsider and for severance. In response, Char Lee Seafood relies on 28 U.S.C. § 1292(a)(1) (permitting interlocutory appeals from orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions"), and 28 U.S.C. § 1292(a)(3) (permitting interlocutory appeals from decrees "determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed").

5

The district court initially entered an injunction in the limitation-of-liability action, staying any court proceedings relating to the disappearance of the F/V Char-Lee II, other than the limitation-of-liability proceeding. But thereafter, it implicitly modified that injunction when it entered an order, sua sponte, consolidating for trial the actions filed by Pickle and Williams with the limitation-of-liability action, thus permitting all three actions to continue to trial.

While Char Lee Seafood did not appeal the consolidation order dated April 1, 1998, it did file a motion for reconsideration and for severance, explaining why the district court should not have sua sponte entered the consolidation order. Through its motion for reconsideration and for severance, Char Lee Seafood was seeking to return to the status under the original injunction. Thus, when the court denied Char Lee Seafood's motion for reconsideration and for severance on June 15, 1998, it was denying a request for a modification of the court's consolidation order which in turn modified its original injunction. It is, of course, well established that an order denying a request to modify an injunction is subject to interlocutory appeal under 28 U.S.C. § 1292(a)(1). See In re Bowoon Sangsa Co., 720 F.2d 595, 597 (9th Cir. 1983) (holding that the "denial, modification, or dissolution of an injunction in a limitation proceeding is appealable as a matter of right under 29 U.S.C. § 1292(a)(1)"); see also Gorman v. Cerasia, 2 F.3d 519, 523 (3d Cir. 1993) (same); In re Mucho K, Inc., 578 F.2d 1156, 1157 (5th Cir. 1978) (same).[1] Accordingly, we conclude that we have jurisdiction to consider this appeal.

III

Char Lee Seafood challenges the district court's consolidation order, arguing that it compromises the exclusivity of its limitation-of-liability action provided for by the Shipowner's Limitation of Liability Act. It maintains that the effect of the court's order is to deny it

_____

[1] While Char Lee Seafood also relies on 28 U.S.C. § 1292(a)(3) to justify its interlocutory appeal, we note that that section does not apply to procedural determinations such as the one under review in this case. See Miskiewicz v. Goodman, 341 F.2d 828, 830-31 (4th Cir. 1965); see also Evergreen Int'l Corp. v. Standard Warehouse, 33 F.3d 420, 424-25 (4th Cir. 1994).

a "concursus of all claims" in the one action and the right to have its Jones Act liability, a question on which a jury trial is ordinarily afforded, tried <u>to the court</u> in the limitation-of-liability case. Both of these consequences would be avoided, Char Lee Seafood argues, if the district court honored the Limitation Act's statutory mandate that all other actions "cease." 46 U.S.C. app.§ 185.

The Shipowner's Limitation of Liability Act, enacted in 1851 to assist shipowners by placing them in parity with European (and particularly English) shipowners who had long enjoyed the benefits of limiting their liability for marine disasters, provides that a shipowner's liability for a maritime loss or mishap is limited to the value of the ship and her pending freight if the mishap occurred "without the privity or knowledge" of the owner. 46 U.S.C. app. § 183(a). Congress designed the Limitation Act "to induce the heavy financial commitments the shipping industry requires by mitigating the threat of a multitude of suits and the hazards of vast, unlimited liability as the result of a maritime disaster." <u>Maryland Casualty Co. v. Cushing</u>, 347 U.S. 409, 414 (1954).

This American limitation statute is particularly beneficial to shipowners. Unlike under the English statute on which it was modeled, under the American statute, the fund against which the claimants must make their claim is equal to the value of the ship <u>after</u> the voyage on which the incident occurred. <u>See Norwich Co. v. Wright</u>, 80 U.S. 104, 120-22 (1871). "Thus if the ship is lost, the value is zero; if a few strippings from the wreck and a life boat or two are saved, those may be solemnly handed over to a trustee or their value ascertained and a bond posted." Grant Gilmore & Charles L. Black, Jr., <u>The Law of Admiralty</u> § 10-29, at 907 (2d ed. 1975).

Under the procedures established both by statute and rule, when the shipowner files a complaint in admiralty to limit its liability for claims arising in connection with its ship and deposits with the court an amount equal to its "interest in the vessel and freight," all claims, except the limitation action, shall "cease," and claimants are required to file their claims in the limitation action. <u>See</u> 46 U.S.C. app. § 185; Fed. R. Civ. P. Supp. R. F(1)-(3), (5). The proceeding is conducted before a court in admiralty without a jury. Through this limitation mechanism, all claims are marshaled and brought into one action --

7

establishing a "concursus" of all claims, Cushing, 347 U.S. at 415 -- and if it is determined that limitation applies, the one action allocates to claimants pro rata the limited funds equaling the value of the ship and its freight pending. See 46 U.S.C. app.§ 184; Fed. R. Civ. P. Supp. R. F(8). As the Court in Cushing noted, "the concursus is not solely for the benefit of the shipowner. The elaborate notice provisions of the Admiralty Rules . . . ensure that all claimants, not just a favored few, will come in on an equal footing to obtain a pro rata share of their damages." 347 U.S. at 417.

If the shipowner fails to establish its right under the Limitation Act and limitation is therefore denied, the claimants are released to pursue their original claims in full. They may do this through a continuation of the limitation proceeding, or they may return to their original forums and prosecute their original claims which had been enjoined by the order entered in the limitation action. See Wheeler v. Marine Navigation Sulphur Carriers, Inc., 764 F.2d 1008, 1011 (4th Cir. 1985); see also Fecht v. Makowski, 406 F.2d 721, 722-23 (5th Cir. 1969); Moore-McCormack Lines, Inc. v. Richardson , 295 F.2d 583, 595-96 (2d Cir. 1961); Pershing Auto Rentals, Inc. v. Gaffney, 279 F.2d 546, 552 (5th Cir. 1960); In re Wood, 230 F.2d 197, 199 (2d Cir. 1956); The Silver Palm, 94 F.2d 776, 780 (9th Cir. 1937).[2]

_____

[2] The Shipowner's Limitation of Liability Act provides that all claims and proceedings, other than the limitation action,"shall cease," 46 U.S.C. app. § 185, possibly suggesting out of context that those claims and proceedings shall come to a permanent end. But in the context of the contingency as to the success, or not, of the limitation action, the word "cease" must be given the meaning of "to forebear" or"to suspend" in order to preserve the rights of claimants to their original actions, including the rights of forum-selection and jury trial, in the event that the limitation action is found to be without merit. See Complete and Universal Dictionary of the English Language 167 (1851) (defining "to cease" as "to forebear or discontinue an action"); see also 2C The Oxford English Dictionary 207 (1978) (defining "to cease" as "to come to the end or to an intermission"); Black's Law Dictionary 223 (6th ed. 1990) (stating that alternative definitions of "cease" include "to bring to an end" and "to suspend"). This conclusion is mandated by our decision in Wheeler, 764 F.2d at 1011, and is consistent with the decisions from the other circuits cited in the text.

IV

The estates and families of Pickle and Williams have alleged Jones Act violations which would entitle them to a trial by jury. See 46 U.S.C. app. § 688(a). Because these plaintiffs have demanded a jury trial, the parties to this appeal have expressed differing views about whether and how the right to jury trial is impacted by the district court's consolidation order.

Char Lee Seafood argues that because all claims must be marshaled into the limitation-of-liability action which is tried to the court, the claimants have no rights to a jury trial on those claims. While the claimants acknowledge that the limitation-of-liability action must be determined first without a jury, they argue for a joint trial before the court and a jury, arguing that "there is no prejudice to the petitioners to proceed with parallel, joined suits in admiralty and at law." They then propose a model under which the claimants would begin the con-solidated trial by presenting their evidence before both the court and a jury on their claim against the owner for negligence and unsea-worthiness. The shipowner would follow with its evidence with respect to a lack of fault, privity, and knowledge. The court would then determine the limitation-of-liability issues. If the court did not limit liability, the claimants would present their evidence of damages to the jury. They argue that this model would preserve Char Lee Sea-food's Limitation Act rights as well as their jury trial right.

We have previously noted that when general maritime claims for negligence and products liability are alleged in a single complaint together with common law claims for negligence and products liabil-ity, all of which arise out of the same incident, the entire case is tried to the jury. See Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 153-54 (4th Cir. 1995) (citing Fitzgerald v. United States Lines Co., 374 U.S. 16, 21 (1963) (combining for jury trial a maintenance and cure claim with a Jones Act claim)). But the very language of the Ship-owner's Limitation of Liability Act precludes the simultaneous trial of a limitation action and a Jones Act action, by providing explicitly that actions other than the limitation-of-liability action must "cease." See 46 U.S.C. app. § 185. Moreover, the claimants must, if they wish to present their claims, reassert them in the limitation-of-liability action apart from their original actions. See Fed. R. Civ. P. Supp. R.

9

F(5). Thus, insofar as claimants proceed in a limitation-of-liability action, they are not entitled to a trial by jury, even if the basis of their claim for fault is made under the Jones Act. But if the limitation-of-liability is denied, then the claimants may elect to proceed with their original actions before any jury authorized and demanded in those actions. See Wheeler, 764 F.2d at 1011; In re Wood, 230 F.2d at 199.

While the district court's consolidation order does not preclude the court from later entering procedural orders which would arrange the order of proof in a way that might be sufficient to protect the parties' interests, the process could become unduly complex. Moreover, while the proofs in the various actions might overlap, it might also turn out that in a limitation action, fault would be conceded in view of the small amount ($1,000) deposited in the district court, thereby obviating the complex process. Even though we can foresee that an experienced judge, such as the district judge in this case, could steer the parties through the process in the circumstances where he has all the cases before him with satisfaction to all, prudence dictates that we heed the Supreme Court's statement in The San Pedro:

> [A]fter [limitation] proceedings have been commenced in the proper district court in pursuance thereof, the prosecution pari passu of distinct suits in different courts, or even in the same court by separate claimants, against the ship-owners, is, and must necessarily be, utterly repugnant to such proceedings, and subversive of their object and purpose.

223 U.S. 365, 373 (1912) (citation and quotation marks omitted) (emphasis added).

Accordingly, we conclude that during the pendency of the limitation-of-liability proceeding, the claimants' original actions must remain stayed. If, however,

> the district court denie[s] limitation of liability, the reason for concursus disappear[s], since the district court no longer need[s] to ensure the fair distribution among claimants of the limitation fund. With the reason for concursus and restraint of other proceedings removed, no reason[would]

> remain[ ] to deprive [the claimants] of their choice of forum
> or of their statutory right to jury trials.

Wheeler, 764 F.2d at 1011. This process is the same as that articulated some 30 years earlier by the Second Circuit:

> [T]he issue of the owner's privity or knowledge must be liti-
> gated in the admiralty court, which has exclusive jurisdic-
> tion over that issue. . . . In the interim, the owner is entitled
> to a restraining order against prosecution of any other suits
> on claims subject to limitation. If, however, the owner shall
> be found not to be entitled to a limitation, his liability will
> be unlimited and there will be no need for a concourse to
> marshal the various claims. In that event the claims will no
> longer be "subject to limitation" within the meaning of [Sup-
> plemental Rule F(3) to the Federal Rules of Civil Procedure]
> and, therefore, any order denying the owner's right to limi-
> tation should contain provisions for lifting the restraining
> order. At that time the claimants may elect to pursue their
> claims to judgment in the admiralty court or pursue their
> rights under the Jones Act.

In re Wood, 230 F.2d at 199 (footnotes omitted).

V

For the foregoing reasons, we remand this case with instructions to the district court to sever the limitation-of-liability action from the other actions and to determine it first while staying the other actions. In the event that the limitation of liability is denied, the court should lift the stay and provide the claimants a choice to pursue their claims in the limitation-of-liability action or to revive their original actions wherein they have demanded trials by jury.

IT IS SO ORDERED

11