**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 23-1312**

―――――――――

IN THE MATTER OF THE COMPLAINT OF UNDER THE BRIDGE WATERSPORTS, LLC, as owner of the 2001 Godfrey Marine Company 22' 0" pontoon vessel, seeking exoneration from or limitation of liability,

        Plaintiff – Appellee,

v.

JENNIFER TRESSLER; CONNOR TRESSLER; LOGAN TRESSLER; LUKE TRESSLER; DAMON SCHORR; CHRISTINA DORRIS; NATHANIEL DORRIS; MELINA DORRIS; MICHAEL DORRIS,

        Claimants – Appellants.

―――――――――

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Court Judge. (1:20-cv-01111-GLR)

―――――――――

Submitted:  January 23, 2024             Decided:  February 28, 2024

―――――――――

Before DIAZ, Chief Judge, and KING and HEYTENS, Circuit Judges.

―――――――――

Affirmed by unpublished opinion. Judge Heytens wrote the opinion, which Chief Judge Diaz and Judge King joined.

―――――――――

**ON BRIEF:** George A. Michak, Lemoyne, Pennsylvania; Christopher D. Buck, LAW OFFICES OF CHRISTOPHER D. BUCK, Annapolis, Maryland, for Appellants. David A. Skomba, Miranda D. Russell, FRANKLIN & PROKOPIK, P.C., Baltimore, Maryland, for Appellee.

―――――――――

Unpublished opinions are not binding precedent in this circuit.

TOBY HEYTENS, Circuit Judge:

After being injured in a boating accident, nine people filed claims against the company that rented them the boat. A district court concluded the rental company is not liable and also awarded the company attorneys' fees for this litigation. Seeing no reversible error, we affirm.

This case stems from an accident on the Isle of Wight Bay in Maryland. A large group—the nine claimants and various family members—rented a pontoon from Under the Bridge Watersports (UTB). While the group was on the Bay a few hours later, the boat's motor failed, and the boat collided with a bridge and capsized.

Several months later, lawyers for the claimants sent two letters to UTB asserting claims arising from the boating accident. UTB responded by filing an action under the federal Limitation of Liability Act, which allows owners of maritime vessels to limit their liability for accidents. 46 U.S.C. §§ 30523(a), 30529(a). An owner does so by filing "a civil action in a district court of the United States" "within 6 months after a claimant gives the owner written notice of a claim." § 30529(a). Once a vessel's owner files such an action, "all claims and proceedings against the owner related to the matter in question shall cease," § 30529(c), and no others may be filed, see *Pickle v. Char Lee Seafood, Inc.*, 174 F.3d 444, 449 (4th Cir. 1999).  Instead, any claimants must bring their claims in the limitation court. *Id.* Barring certain exceptions, the Act caps a vessel owner's liability at the vessel's value *after* the accident. See *id.* (stating that, when the Act applies, "the fund against which the claimants must make their claim is equal to the value of the ship *after* the voyage on which the incident occurred"). UTB requested a judgment that it was "not liable for any losses,

3

damages, or injuries . . . for any claim arising" from the ill-fated voyage, or, in the alternative, that "its liability be limited" to $0—the value of the now-destroyed pontoon. JA 18.

The district court then ordered "all persons claiming damages for any and all losses, damages, or injuries occasioned by or resulting from" the accident to file claims with the court. JA 37. The claimants did so. The district court granted summary judgment to UTB. The court also interpreted a clause in the rental contract as requiring the claimants to pay UTB's attorneys' fees.

We agree with the district court's conclusion that UTB has no liability to the claimants. The central question is whether the claimants can show the accident resulted from UTB's negligence. That question is relevant in two ways. First, the claimants can avoid the Act's limitations on liability if they show the accident was caused by "acts of negligence" of which UTB had "actual knowledge" or which "could have been discovered through reasonable diligence." *Empresa Lineas Maritimas Argentinas S.A. v. United States*, 730 F.2d 153, 155, 157 (4th Cir. 1984). If the claimants fail to do so, their recovery is capped at the pontoon's current value (that is, $0). Second, the claimants all signed documents stating that they:

> voluntarily release, forever discharge, and agree to indemnify and hold harmless [UTB] from any and all claims, demands, or causes of action, which are in any way connected with [their] participation in this activity or [their] use of [UTB's] equipment or facilities, including any such claims which allege negligent acts or omissions of [UTB].

4

JA 265. Under Maryland law—which the claimants concede applies here—that exculpatory clause is enforceable unless the claimants can show the accident resulted from an "extreme form[] of negligence." *Wolf v. Ford*, 644 A.2d 522, 525 (Md. 1994).

Before the district court, the claimants offered two theories of negligence, both of which the court rejected. First, the claimants argued the boat was unseaworthy given that a portion of the engine failed. But the court noted that the claimants' own expert testified that the relevant component could have failed absent any negligence and that the claimants produced no evidence suggesting a negligent cause for the malfunction. Second, the claimants asserted that UTB violated its duty of care by allowing too many people and too much weight on the pontoon. But the court concluded that any wrongdoing in that regard was not the proximate cause of the accident because the claimants had not produced "sufficient evidence . . . that the overloading of the [pontoon] contributed to the" accident, and, even if they had, the engine failure was a "superseding cause." JA 648.

Before us, the claimants neither challenge nor respond to either of these conclusions. Instead, they raise a flurry of arguments—based on *res ipsa loquitur*, spoliation, negligence per se, and unconscionability—that they failed to raise in the district court. We review forfeited arguments in civil cases only for "fundamental error," *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014), and we see none here. We thus affirm the district court's conclusions that the Act limits UTB's liability to the pontoon's post-accident value ($0), and that, by signing the rental agreement, the claimants waived any claims they had against UTB.

5

We also reject the claimants' challenge to the district court's attorneys' fees award. The rental agreement that each claimant signed states: "Should [UTB,] or anyone acting on their behalf, be required to incur attorney's fees and costs to enforce this agreement, I agree to indemnify and hold them harmless for all such fees and costs." JA 265.

The claimants do not dispute the district court's conclusion that such clauses are generally enforceable under Maryland law. See *Nova Rsch., Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 286 (Md. 2008). Rather, they argue that this indemnification clause is unenforceable because it is "unconscionable," in part because the rental agreement was a "contract of adhesion." Tressler Br. 24, 34, 36. But that argument, too, was never made in the district court. It is also unconvincing. Unconscionable contracts are characterized by "one party's lack of meaningful choice," and the claimants, of course, "were not forced" to rent a pontoon. *Barrie Sch. v. Patch*, 933 A.2d 382, 394 (Md. 2007). To the contrary, "the record does not suggest that [the rental agreement] was anything but an arm's-length business transaction." *Id.*

We are also unpersuaded by the claimants' argument that the indemnification clause should not be interpreted to apply here because UTB was not—as contemplated by the contract—"*required* to initiate this litigation." Tressler Br. 17. To preserve its rights under the Limitation of Liability Act, UTB was required to initiate this action within six months of receiving claimants' letters. See 46 U.S.C. § 30529(a). Had UTB allowed the statutory six-month window to pass without initiating this litigation, it could have lost the ability to contest a challenge to the Act's coverage or to have the matter litigated in a federal forum. See *Vatican Shrimp Co. v. Solis*, 820 F.2d 674, 678 (5th Cir. 1987). After UTB commenced

6

this proceeding to assert its entitlement to limit its liability, the claimants continued to dispute that assertion by filing verified claims seeking almost a million dollars from UTB. Thus, if UTB had not filed this action and sought to enforce the terms of the rental agreement, it risked incurring significant liability to the claimants.

For similar reasons, we reject the claimants' argument that UTB was not "required" to raise its contractual defenses to liability. If UTB prevailed on its Limitation of Liability Act argument, say the claimants, any liability would already be functionally precluded because the Act would have reduced any damages to $0. But once the claimants expressed an intent to hold it liable for the accident, UTB had no duty to forgo arguments in its own defense.

The district court's judgment is

*AFFIRMED*.